**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ULTIUM CELLS LLC,**<br><br>**7400 Tod Avenue SW**<br>**Warren, Ohio 44481**<br><br>**Plaintiff**<br><br>**v.**<br><br>**AXELS TRADING COMPANY LIMITED,**<br><br>**Lifford Hall Lifford Lane, Kings Norton, Birmingham, West Midlands, United Kingdom B30 3JN**<br><br>**Serve Also: The Barn, Addersgate Lane, Northowram, Halifax, United Kingdom HX3 7TD**<br><br>**Defendant.** | ) | **Judge:**<br><br>**Case No.** |

**COMPLAINT**

Plaintiff Ultium Cells LLC ("Ultium Cells"), for its Complaint against Defendant Axels Trading Company Limited ("Axels"), alleges as follows:

1. Ultium Cells brings this action to recover money it paid for product that Axels did not deliver and to obtain declaratory relief resolving an actual and present controversy over the effect of Ultium Cells' termination of a Purchase Order with Axels.

2. Axels has refused to refund Ultium Cells for the value of the undelivered product, and has instead asserted that Ultium Cells owes Axels millions of dollars for unmanufactured and undelivered product, despite Ultium Cells' termination of the Purchase Order in accordance with the applicable contractual terms.

3. Ultium Cells therefore seeks damages for amounts it paid for which it has received

no product, declaratory relief determining the parties' rights and obligations, and its costs and attorney fees in pursuing this action.

**PARTIES, JURISDICTION, AND VENUE**

4. Plaintiff Ultium Cells LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Warren, Ohio.

5. The sole member of Ultium Cells LLC is Ultium Cells Holdings LLC.

6. The two members of Ultium Cells Holdings LLC are General Motors Holdings LLC and LG Energy Solution Michigan, Inc.

7. The sole member of General Motors Holdings LLC is General Motors Company.

8. General Motors Company is a Delaware corporation with its principal place of business in Michigan and is therefore a citizen of Delaware and Michigan. LG Energy Solution Michigan, Inc. is a Delaware corporation with its principal place of business in Michigan and is also therefore a citizen of Delaware and Michigan.

9. Ultium Cells LLC is therefore a citizen of Delaware and Michigan for purposes of 28 U.S.C. § 1332.

10. Defendant Axels Trading Company Limited is, on information and belief, a corporation organized under the laws of the United Kingdom with its principal place of business in Halifax, United Kingdom, and is therefore a citizen or subject of the United Kingdom for purposes of 28 U.S.C. § 1332(a)(2).

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the action is between a citizen of a State and a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. The Court has personal jurisdiction over Axels because it accepted and partially

performed under a Purchase Order for goods it knew would be delivered to Ultium Cells' Ohio facility, breached its contractual obligations to Ultium Cells for the provision of such goods intended for shipment to Ohio, and because Axels consented to this Court's jurisdiction in the General Terms and Conditions applicable to the Purchase Order.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the contracting relationship with Ultium Cells in Warren, Ohio, the express requirement in the Purchase Order for delivery of product to Ohio, and Axels' failure to deliver product for which Ultium Cells paid.

14. Venue is also proper because Axels agreed in the General Terms and Conditions governing the Purchase Order at issue that for any action by Buyer (Ultium Cells) against Seller (Axels), Ultium Cells may bring the action "in any court(s) having jurisdiction over [Axels]" or in the "court(s) having jurisdiction over [Ultium Cells] Location, in which event [Axels] consents to such jurisdiction…"

## FACTUAL ALLEGATIONS

15. Ultium Cells manufactures battery cells for electric vehicles at multiple facilities, including a facility in Warren, Ohio.

16. One of the consumable supplies Ultium Cells uses during the manufacturing process is JIG paper.

17. JIG paper is a thin chemically treated sensor film used for verifying that the manufacturing equipment has applied uniform pressure across the entire cell.

18. On or about January 16, 2024, Ultium Cells issued a Purchase Order (the "Purchase Order") to Axels for JIG paper needed at its Warren facility. A true and correct copy of that

Purchase Order (PO 4502145351) is attached as Exhibit A.

19. Axels accepted and assented to the Purchase Order.

20. The Purchase Order identified a quantity of 25,200 units for delivery to the Warren facility, and a unit price of $198.00, for a total amount of $4,989,600.00.

21. The Purchase Order also contained a buyer's note stating "03 Years Blanket PO," which indicated that Ultium Cells anticipated purchasing the specified quantity over a three-year period.

22. The Purchase Order was subject to Ultium Cells' July 2020 General Terms and Conditions. A true and correct copy of the General Terms and Conditions is attached as Exhibit B.

23. Although Axels has recently stated to Ultium Cells a belief that it did not receive the General Terms and Conditions at the time of contracting, Ultium Cells' purchasing system electronically transmits all Purchase Orders with the accompanying terms and conditions upon issuance of the purchase order.

24. And, in response to a request from Axels less than two weeks after issuance of the Purchase Order, Ultium Cells sent Axels a second copy of the Purchase Order and General Terms and Conditions by email on January 29, 2024. A true and correct copy of that communication is attached as Exhibit C.

25. Those General Terms and Conditions, which take priority over information on the face of the Purchase Order (*see* Paragraph 1), state that the contract formed by the Purchase Order and General Terms and Conditions, "does not guarantee any minimum purchase quantity." (Paragraph 2).

26. Ultium Cells had the option, in accordance with the General Terms and Conditions, to set the schedule and quantities of Axels' JIG paper shipments (Paragraph 4).

27. On or about February 8, 2024, Ultium Cells paid Axels $1,663,200.00 under the Purchase Order, representing a request for production and shipment of 8,400 units of JIG paper under the terms of the Purchase Order.

28. Axels, having accepted the Purchase Order and General Terms and Conditions, partially performed its obligations under the Purchase Order, and shipped 4,200 units of the paid-for JIG paper in six shipments from March 12, 2024 through September 13, 2024.

29. However, before Axels produced and delivered the remaining 4,200 units, which Ultium Cells paid for and which are valued at $831,600.00 based on the per unit price, Ultium Cells elected to terminate the Purchase Order for convenience.

30. Under Paragraph 21 of the General Terms and Conditions, Ultium Cells had the right to terminate the Purchase Order "at any time for any reason" by giving written notice to Axels, and on November 20, 2024, Ultium Cells exercised its contractual right to terminate the Purchase Order, for convenience, by written notice. A true and correct copy of Ultium Cells' noticed of cancellation and Axels' confirmed receipt of that notice is attached as Exhibit D.

31. In the event of Ultium Cells' termination for convenience, its obligations to Axels are limited to the following amounts, without duplication, under Paragraph 31 of the General Terms and Conditions:

> (a) the contract price for all goods and services that have been completed in accordance with this Contract and not previously paid for; and (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract, to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract; less, however, the sum of the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent and the cost of any damaged or destroyed goods or material.

32. Although Ultium Cells had already paid Axels for the outstanding 4,200 units at

the time of the notice of termination, Axels had not yet manufactured those 4,200 units and failed to complete its obligations to provide Ultium Cells with those paid-for units.

33. Nearly two years later, and despite Ultium Cells requesting a refund of the $831,600.00 Ultium Cells paid for product it never received, Axels continues to refuse to provide the remaining 4,200 units.

34. Axels has not identified any qualifying finished units or procured raw materials for which it claims to be owed payment under Paragraph 31.

35. Despite Ultium Cells' termination consistent with the General Terms and Conditions, Axels asserted, and continues to assert, that Ultium Cells owes it for the full amount of the 25,200 units referenced in Purchase Order, less any amounts already paid.

36. Axels takes this position despite the language in the General Terms and Conditions allowing Ultium Cells to terminate for convenience and the absence of any guarantee of a minimum purchase quantity.

37. Although Ultium Cells has demanded that Axels refund it $831,600.00, representing the value of the product units for which Ultium Cells paid and that Axels did not deliver, Axels has refused to provide the refund and has instead asserted that Ultium Cells did not properly terminate the Purchase Order.

38. Axels has demanded payment from Ultium Cells in the amount of $3,326,400.00, along with other unquantified amounts, representing alleged overhead and business infrastructure expenses Axels alleges it incurred in attempting to fulfill the Purchase Order.

39. And Axels has also informed Ultium Cells that in order to provide the outstanding 4,200 units of JIG paper, Ultium Cells will need to make an additional payment of $74,130.00 to cover rising raw material costs, despite Ultium Cells having prepaid for these 4,200 units at the

previously agreed price per unit.

40. Axels made the foregoing demands despite the limitations imposed in Paragraph 31 of the General Terms and Conditions on Ultium Cells' obligations in the event of termination for convenience, which state:

> Except as expressly provided in this Section, Buyer will not be liable for and will not be required to make payments to Seller, directly or on account of claims by Seller's subcontractors, for loss of anticipated profit, overhead, interest on claims, facilities and equipment rearrangement costs or rental, unamortized depreciation costs, or general and administrative burden charges from termination of this Contract. The payment specified in this Section is Seller's sole remedy for Termination for Convenience of this Contract.

41. An actual controversy therefore exists between the parties concerning, among other things, whether the Purchase Order was properly terminated, whether it created a minimum-purchase or full-value obligation as Axels asserts, and whether Axels is entitled to any further payments from Ultium Cells.

42. In addition to the contractual remedies noted above, Ultium Cells is also entitled to recover it costs and legal fees in pursuing this action, in accordance with General Terms and Conditions Paragraph 22.

**COUNT I**
**Breach of Contract**

43. Ultium Cells incorporates by reference the allegations in Paragraphs 1 through 42 as if fully set forth herein.

44. The Purchase Order and July 2020 General Terms and Conditions formed a valid and enforceable contract between Ultium Cells and Axels.

45. All conditions precedent to Ultium Cell's claims have occurred, been performed, or been waived including, among other activities, Ultium Cells paying Axels $1,663,200.00 for an initial order of 8,400 units of JIG paper.

46. Axels breached its contractual obligations by, among other things, failing to deliver 4,200 of the 8,400 units for which Ultium Cells paid.

47. Axels also breached its obligations by refusing to refund the $831,600 Ultium Cells paid for the undelivered 4,200 units after Ultium Cells terminated the Purchase Order and demanded a refund.

48. As a direct and proximate result of Axels' breaches, Ultium Cells has been damaged in an amount of at least $831,600.00.

**COUNT II**
**Unjust Enrichment**
**(Alternative to Count I)**

49. Ultium Cells incorporates by reference the allegations in Paragraphs 1 through 48 as if fully set forth herein.

50. This Count is pled in the alternative to Count I, pursuant to Rule 8(d)(2) and (3) of the Federal Rules of Civil Procedure.

51. This Count applies only if the Court determines that no enforceable contract incorporating the July 2020 General Terms and Conditions governs the Purchase Order.

52. Ultium Cells paid Axels $1,663,200.00 for 8,400 units of JIG paper under the Purchase Order.

53. Axels accepted and retained that payment.

54. Axels delivered only 4,200 of the 8,400 units for which Ultium Cells paid.

55. Axels has retained $831,600.00 of Ultium Cells' payment without delivering the corresponding 4,200 units of JIG paper and without refunding that amount to Ultium Cells.

56. Ultium Cells conferred a benefit on Axels in the amount of $831,600.00 for product Axels never delivered.

57. Axels had knowledge of this benefit and knowingly accepted and retained it.

58. It would be unjust for Axels to retain the $831,600.00 Ultium Cells paid for the 4,200 units of JIG paper Axels did not deliver, without either delivering that product or returning the funds paid for it.

59. Axels has been unjustly enriched at Ultium Cells' expense in an amount of at least $831,600.00

60. Ultium Cells is entitled to restitution of that amount, plus interest as permitted by law.

**COUNT III**
**Declaratory Judgment**

61. Ultium Cells incorporates by reference the allegations in Paragraphs 1 through 60 as if fully set forth herein.

62. Ultium Cells brings this Count III under 28 U.S.C. §§ 2201, 2202, and Rule 57 of the Federal Rules of Civil Procedure.

63. An actual, present, and justiciable controversy exists between Ultium Cells and Axels regarding their respective rights and obligations under the Purchase Order and its General Terms and Conditions.

64. Axels contends that the Purchase Order was a three-year blanket order that obligates Ultium Cells to pay the full face amount of the Purchase Order notwithstanding Ultium Cells' termination in accordance with the General Terms and Conditions (Paragraph 31) and the express statement that the Purchase Order, "does not guarantee any minimum purchase quantity." Paragraph 2).

65. Axels also contends that Ultium Cells is obligated to compensate Axels for expenses Axels incurred for, among other items, enhancing its clean-room capabilities, adding

equipment, adding and training employees, improving its quality control system, and updating equipment and inventory/raw materials, despite a direct statement in the General Terms and Conditions that Ultium Cells is not responsible for consequential damages including, but not limited to, "facilities and equipment rearrangement costs or rental, unamortized depreciation costs, or general and administrative burden charges from termination of this Contract." (Paragraph 31).

66. Axels has made the above demands based on its flawed understanding of the Parties' contractual obligations.

67. Ultium Cells disputes Axels' construction of the Parties' contractual obligations.

68. A judicial declaration is necessary and appropriate now because it will resolve the Parties' dispute about whether the contractual relationship was properly terminated, whether Axels is entitled to any further payments under the Purchase Order, including its demand for what amount to consequential damages, and whether Axels must refund the money it received for product it did not deliver.

69. Ultium Cells is entitled to a declaration that:

a. It validly terminated Purchase Order 4502145351 for convenience on November 20, 2024;

b. The "03 Years Blanket PO" note on the face of the Purchase Order does not create a minimum-purchase obligation, fixed-volume obligation, or obligation requiring Ultium Cells to pay the full face amount of the Purchase Order;

c. Section 31 of the July 2020 General Terms and Conditions limits Axels' remedy for Ultium Cells' termination for convenience to the contract price for JIG paper Axels had completed at the time of termination but for which Ultium Cells has not previously paid, and the actual costs of work-in-process and raw materials

incurred by Axels as of termination, under the conditions specified in Paragraph 31;

d. Axels is not entitled under the Purchase Order or the July 2020 General Terms and Conditions to recover from Ultium Cells the unpaid balance or full face amount of the Purchase Order based on Axels' theory that the Purchase Order was a three-year blanket order; and

e. Axels is not entitled to payment of expenses Axels allegedly incurred for enhancing its clean-room capabilities, adding equipment, adding and training employees, improving its quality control system, and updating equipment and inventory/raw materials, because those items are excluded from Axels' available remedies under Paragraph 31 of the General Terms and Conditions.

**WHEREFORE**, Plaintiff Ultium Cells LLC respectfully requests that the Court enter judgment in its favor and against Defendant Axels Trading Company Limited and award Ultium Cells actual damages in an amount of at least $831,600.00; enter a declaration consistent with Paragraphs 61 through 69; award prejudgment and post judgment interest as permitted by law; award reasonable attorneys' fees and costs as recoverable under the General Terms and Conditions and applicable law; and award such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Michael L. Meyer*
Michael L. Meyer (0093190)
Taft Stettinius & Hollister LLP
301 E. Fourth St., Suite 2800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Facsimile: (513)-381-0205
mmeyer@taftlaw.com

*Attorneys for Plaintiff Ultium Cells LLC*